IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| R.R., by and through her parents and Next Friends, TIMMERI REEVES and RYLEE REEVES, TIMMERI REEVES, individually, and RYLEE REEVES, individually,<br><br>Plaintiffs,<br><br>vs.<br><br>KELLY GARCIA, in her personal and official capacities, SADIE RHAMY, in her personal and official capacities, WYATT TOWNE, in his personal and official capacities, and BETH MILLER, in her personal and official capacities,<br><br>Defendants. | CASE NO. 4:26-cv-00439<br><br>**COMPLAINT AND JURY DEMAND:**<br><br>1) 42 U.S.C. § 1983 (FOURTH AMENDMENT)<br><br>2) 42 U.S.C. § 1983 (SUBSTANTIVE DUE PROCESS)<br><br>3) 42 U.S.C. § 1983 (PROCEDURAL DUE PROCESS)<br><br>4) 42 U.S.C. § 1983 (FIRST AMENDMENT)<br><br>5) DECLARATORY AND INJUNCTIVE RELIEF |

Plaintiffs, R.R., by and through her parents and Next Friends, TIMMERI REEVES and RYLEE REEVES, TIMMERI REEVES, individually, and RYLEE REEVES, individually, bring this Complaint against Defendants, KELLY GARCIA, in her personal and official capacities, SADIE RHAMY, in her personal and official capacities, WYATT TOWNE, in his personal and official capacities, and BETH MILLER, in her personal and official capacities, for damages and prospective relief, and in support thereof state as follows:

## INTRODUCTION

1. This action arises from Defendants' unlawful interference with a family during a medical crisis. While Plaintiffs' child lay dying in the hospital, government officials prevented Plaintiffs from being at the child's bedside, coerced Plaintiffs into consenting to the removal of their other child, and continued that removal after learning Plaintiffs could not have caused the child's injuries. Defendants further prolonged the separation after Plaintiffs revoked their consent and retained counsel, relied on false, incomplete, and misleading statements to justify continued state custody, and failed to provide necessary mental-health treatment while the child remained in state custody.

2. Pursuant to 42 U.S.C. section 1983, Plaintiffs seek damages, declaratory relief, and injunctive relief for violations of their rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

## JURISDICTION AND VENUE

3. This Court has original jurisdiction over Plaintiffs' claims pursuant to 42 U.S.C. § 1983 and under 28 U.S.C. §§ 1331 and 1343.

4. Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district, Defendants engaged in the actions alleged below in this district, and Defendants are subject to personal jurisdiction in this district.

## THE PLAINTIFFS

5. Plaintiffs are citizens of the United States and at all times material to this action, were, and continue to be, residents of Truro, Madison County, Iowa.

6. Plaintiff, R.R., was a citizen of the United States and a resident of Iowa who is a minor having no legally appointed guardian or conservator. R.R. is the biological daughter of Plaintiffs Timmeri and Rylee Reeves.

7. R.R. brings this action by Timmeri Reeves and Rylee Reeves, R.R.'s parents and Next Friends.

8. Plaintiff Timmeri Reeves ("Timmeri") is the biological mother and Next Friend of R.R., who, at all material times hereto, is a citizen of the United States and a resident of Madison County, Iowa.

9. Plaintiff Rylee Reeves ("Rylee") is the biological father and Next Friend of R.R., who, at all material times hereto, is a citizen of the United States and a resident of Madison County, Iowa.

**THE DEFENDANTS**

10. Kelly Garcia, in her personal and official capacities, was the Director of the Iowa Department of Health and Human Services ("DHHS") at all times material to this action and was responsible for developing, implementing, and overseeing the policies, customs, and practices pertaining to child protective services involving DHHS, which is an agency of the State of Iowa, responsible for child protective services within the State of Iowa.

11. Wyatt Towne, in his personal and official capacities, is a resident of the State of Iowa and was employed by DHHS as a child protection worker assigned to R.R.'s case at all times material to this action.

12. Sadie Rhamy, in her personal and official capacities, is a resident of the State of Iowa and was employed by DHHS as a child protection worker assigned to R.R.'s case at all times material to this action.

13. Beth Miller, in her personal and official capacities, is a resident of the State of Iowa and was employed by the Iowa Department of Criminal Investigation ("DCI") who was an agent assigned to the investigation of Beau's death and directly participated in the removal and retention of the State's legal custody over R.R. at all times material to this action. DCI is an agency of the State of Iowa.

## FACTUAL BACKGROUND

14. On October 8, 2024 at approximately 8:15 a.m., Timmer dropped off her four-month-old son, Beau, and three-year old daughter R.R., at daycare with their child-care provider, Melissa Hancock. Hancock was an unlicensed daycare provider located in Indianola, Warren County, Iowa.

15. At approximately 12:00 p.m. on October 8, Hancock called 911 to report that Beau was unresponsive with froth coming out of his mouth and nose. Timmeri was then contacted by telephone and advised that Beau was being transported via LifeFlight to Blank Children's Hospital in Des Moines, Polk County, Iowa, from his daycare facility for emergency treatment.

16. Shortly after arriving at Blank Children's Hospital on October 8, Timmeri and Rylee were informed by Beau's treating physician that Beau incurred a severe traumatic brain injury. They were told that, when the paramedics arrived at Beau's daycare, they determined he had no heartbeat and immediately began CPR.

The paramedics were able to obtain a heartbeat, but there was little to no sign of brain activity.

17. Upon arriving at the Pediatric Intensive Care Unit ("PICU"), Timmeri and Rylee were advised that hospital staff were instructed by Defendants not to allow anyone to see Beau. Timmeri and Rylee begged staff to let them see their dying son, who was thirty feet away. Timmeri and Rylee were told that hospital staff were directed by DHHS, led by Rhamy, and DCI, led by Miller, that they were not allowed to see their son.

18. On October 9, Timmeri and Rylee were both approached by Rhamy and Towne. Rhamy and Towne demanded consent to the temporary removal of R.R., pending the criminal investigation into the cause of the injuries sustained by Beau.

19. When Rhamy and Towne demanded consent on October 9, they were deliberately withholding Timmeri and Rylee from being at Beau's side.

20. When demanding consent, Rhamy and Towne threatened to never let Timmeri and Rylee see R.R. again if they refused to consent to removal of R.R.

21. When demanding consent, Rhamy and/or Towne stated Timmeri would lose her daughter one or another and threatened Timmeri that "if" Timmeri would not leave Beau's side at the PICU and come to their office.

22. When demanding consent, Rhamy and Towne represented to Timmeri and Rylee that R.R. would be removed for only two-to-five days while Timmeri and Rylee dealt with their son's tragedy.

23. When demanding consent, Rhamy and Towne stated that it was Timmeri's and Rylee's burden to provide their own evidence to prove they were not responsible for Beau's injuries.

24. When demanding consent, Rhamy and Towne stated, "it's your [the parents] job to prove why you should have access to your children."

25. At the time Rhamy and Towne demanded consent for the removal of R.R., government officials lacked reasonable suspicion to support any belief that Timmeri or Rylee had committed child abuse with respect to Beau or R.R.

26. Instead, removal of R.R. was demanded for the following reason:

> The department, along with law enforcement, has not ruled out any suspected currently and everyone who has had these children in their care over the last several weeks is being looked in to. This includes any relatives and parents as well. All concerns must be alleviated before this child is returned to their parents' care.

27. DHHS removed R.R. despite lacking individualized suspicion and required the parents to prove their innocence.

28. As a result of the foregoing threats, misrepresentations, and coercive tactics, Timmeri and Rylee signed a consent for temporary removal on October 9. As a direct and proximate result, on October 10, R.R. was removed from Timmeri and Rylee and legal custody of R.R. was placed with DHHS for purposes of placement with Amanda Farlow, under DHHS supervision. Farlow lived in Truro, Madison County, Iowa.

29. Farlow informed Timmeri and Bryan Arzani (father of Timmeri and grandfather of R.R. and Beau), that R.R. began having episodes of losing her focus and making comments about Beau.

30. Farlow also informed Timmeri and Arzani that R.R. was exhibiting new and strange behaviors indicative of a child in immediate need of mental health services, including, but not limited to, playing with her own feces, hiding, being overly emotional and scared, and acting out.

31. On October 10, Timmeri and Arzani immediately informed Rhamy of R.R.'s acute mental health problems and immediate need for mental health services.

32. Rhamy refused mental health services for R.R., stating DHHS was only responsible for physical safety.

33. On October 12, Beau's medical providers concluded Beau would not recover from his injuries and declared him brain dead. Beau was pronounced dead at 9:55 a.m. Devastated, Timmeri and Reeves remained in the hospital and made the decision to donate Beau's organs to save others' lives. After Beau's walk of honor, Timmeri and Reeves returned home without Beau or R.R.

34. A hearing was scheduled for October 18. The hearing, however, was continued, with the Court being informed a dismissal should be filed before then so that R.R. could return to her parents. R.R., however, was not returned home.

35. As part of the joint involvement between DHHS and DCI, a multidisciplinary team ("MDT") was established to coordinate the dissemination of information between the various stakeholders. The MDT was included representatives from DHHS (including Rhamy and Towne), DCI, county attorneys, and Beau's medical providers.

36. The MDT met on October 28. That day, it was unanimously agreed that Timmeri and Rylee were not the perpetrators of Beau's injuries. The MDT documented its conclusion by stating as follows:

> The overall timeline was discussed and all parties involved agreed that based *on this it would reassure the parents not being the perpetrators.* . . .
>
> . . . . Professionals shared today that Beau had retinol hemorrhaging, 3 layers of hemorrhages and the retinas nearly detached which is most likely caused by a shaking mechanism. Beau would not be normal after this injury occurred *and all parties present agreed that these injuries would have occurred after that time that Beau was dropped off at daycare.*"

(Emphasis added).

37. Therefore, no later than October 28, 2024, it was determined by the MDT, which included DHHS and DCI, that Timmeri and Rylee did not cause Beau's injuries. Instead, Beau's injuries happened *after* Beau's parents dropped him off at daycare. DHHS informed Timmeri and Rylee that law enforcement and DHHS ruled out Timmeri and Rylee has suspects in Beau's injuries and subsequent death.

38. Defendants did not return R.R. to Timmeri and Rylee after the MDT's October 28 exculpatory conclusions. Instead, DHHS retained legal custody, despite Defendants' knowledge of the MDT's determination.

39. On October 31, Arzani directly contacted Director Garcia. Arzani informed Director Garcia of R.R.'s situation and informed Garcia that DHHS had made no progress toward returning R.R. back to her parents, had not provided R.R. necessary mental health care following the traumatic death of her brother and removal, and had not even performed a required home check of Farlow's home.

40. Following Arzani's October 31 telephone call with Director Garcia, Towne contacted Farlow to schedule a home visit, which occurred on November 2. During the home visit, Farlow reiterated to Towne that "the family is wanting [R.R.] returned home as soon as possible."

41. Arzani then had multiple conversations with Director Garcia expressing concerns that nothing was being done by DHHS to return R.R. to her parents. Over the next two weeks, Director Garcia repeatedly stated DHHS would "soon" begin the process to return R.R. to her parents. R.R., however, was not returned home.

42. By November 6, Defendants had not returned R.R. to her parents. So, that day, Timmeri and Rylee, through legal counsel, filed a written revocation of consent to temporary removal, asking the Court to order DHHS to return R.R. home to her parents. The revocation of consent informed the Court that, "Based upon the information obtained by law enforcement and DHHS, both parents have been ruled out as suspects in Beau's injuries and subsequent death."

43. On November 8, and in response to the revocation of consent, an Application for Temporary Removal was filed in the Iowa District Court for Madison County.

44. The Application for Temporary Removal stated to the District Court,

> [C]ontrary to the statement in Revocation for Consent filed by counsel for the parents, *none of the individuals that were caregivers of B.R. in the days leading up to October 8, 2024 have been ruled out as suspects*."

(Emphasis added).

45. The Application also suggested Timmeri and Rylee were responsible for Beau's injuries, stating,

> *Continued removal is necessary to avoid imminent danger to the child, and continued placement in the home would be contrary to the child's welfare*: the child's brother passes away as a result of violent and traumatic injuries, investigators have not finalized their investigation into when, how, or by whom these injuries occurred, *and the parents were two of the five different individuals who were caregivers of the children in the days leading up to October 8, 2024*.

(Emphasis added).

46. The foregoing statements contained in the Application for Temporary Removal were false and directly contradicted by the documented consensus of the MDT that Timmeri and Rylee did not cause Beau's injuries and that it was not medically possible for Timmeri or Rylee to have caused Beau's "violent and traumatic" injuries. At no time did DHHS or DCI inform the District Court of the MDT's unanimous conclusion that Timmeri and Rylee were not responsible for Beau's injuries or that the medical evidence established Beau's injuries were sustained while Beau was at daycare and under the sole care and supervision of Beau's daycare provider.

47. Defendants, through their deliberate investigative and other non-prosecutorial actions and omissions, caused prosecutors to file the foregoing false and misleading statements in the Application for Temporary Removal on November 8.

48. On or about November 12, R.R. had still not been returned to her parents. So, Arzani spoke with Director Garcia, again. Director Garcia stated, "We hope to begin our investigation after the court hearing on Friday, November 15th." Director Garcia repeatedly stated this despite DHHS's knowledge Timmeri and Rylee could not have caused Beau's traumatic injuries and DHHS's knowledge Timmeri and Rylee posed no threat to R.R. whatsoever.

49. Arzani was dismayed at Director Garcia's statement that no investigation had begun, and he informed Director Garcia that members of the media should be made aware of this situation due to the immense trauma being inflicted upon R.R., Timmeri, and Rylee.

50. Shortly after Arzani's conversation with Director Garcia, on November 14, Towne, Rhamy, and Miller met to discuss the case. According to a summary of the meeting, "Discussion was had pertaining to the case and the status of [R.R.] It was discussed that interviews with R[ylee], Timmeri, [Arzani], and Melanie [Timmeri's mother and R.R.'s grandmother] should occur as soon as possible then determination of returning [R.R.] back home." Towne and Rhamy contacted Timmeri's and Rylee's legal counsel, and an interview was held that afternoon.

51. The next morning, November 15, 2024, the Application for Temporary Removal filed the week before was abruptly dropped. At that time—over a month after being taken away from her parents following the death of her four-month-old brother—Defendants allowed R.R. to return home.

52. Following the dismissal of the removal, Rhamy stated DHHS would no longer be involved. Rhamy informed Timmeri, Rylee, and Azani, with their counsel present, that Miller prevented DHHS from returning R.R. to Timmeri and Rylee.

53. Miller and Arzani then had a telephone call. During the call, Miller admitted it was her "personal call" not to allow DHHS to return R.R. to her parents. Miller emphasized that she (Miller) was the person in charge of the decision to keep R.R. away from her parents, despite the unanimous conclusion of the MDT on October

28 that Timmeri and Rylee could not have caused Beau's fatal injuries based on the timeline and nature of Beau's injuries.

**COUNT I**
**UNCONSTITUTIONAL SEARCH AND SEIZURE**
**(against all Defendants in their personal capacities)**

54. Each and every allegation of the Complaint is incorporated herein as if fully set forth.

55. The Fourth Amendment to the United States Constitution guarantees the right to be free from unreasonable searches and seizures by government officials. U.S. Const. amend. IV.

56. Defendants, like other state officers, are governed by the Fourth Amendment's warrant requirement, and thus, they must obtain valid consent, have sufficient grounds to believe that exigent circumstances exist, or qualify under another recognized exception to the warrant requirement before engaging in and continuing warrantless seizures.

57. The removal of R.R. from the parental custody of Timmeri and Rylee constitutes a "seizure" for purposes of the Fourth Amendment to the United States Constitution.

58. Any purported consent was not voluntary under the totality of the circumstances.

59. Even when consent is voluntarily given, it may be revoked. Both Timmeri and Rylee explicitly revoked consent to temporary removal of R.R. no later than November 6, 2024.

60. Defendants (acting under color of law), deprived Plaintiffs of their right to be free from unlawful searches and seizures in violation of the Fourth Amendment to the United States Constitution, by their action of:

a. Obtaining consent for removal of R.R. that was the product of duress and coercion;

b. Continued seizure without cause after October 28, 2024;

c. Continued seizure of R.R. after revocation of consent; and

d. Prolonged seizure of R.R. by engaging in investigative and other non-prosecutorial conduct causing knowingly false, incomplete, and misleading statements to be filed with the Court on November 8, 2024.

61. The foregoing actions or inactions of Defendants were performed in direct coordination and agreement with each other, such that the Defendants actions constitute civil conspiracy, concert of action, and substantial assistance.

62. The foregoing actions and inactions of Defendants constitute a failure to exercise an affirmative duty to all Plaintiffs, which is a substantial factor leading to, and proximate cause of, the violation of constitutionally protected interests of all of the Plaintiffs under the Fourth Amendment of the United States Constitution.

63. The foregoing actions and inactions of these Defendants, including by and through the joint conduct and civil conspiracy, constitute a policy, pattern, practice, and/or custom that is inconsistent with the exercise of reasonable professional judgment and amounts to deliberate indifference to the serious and constitutionally protected rights under the Fourth Amendment of all of the Plaintiffs.

64. At the time of the deprivation, it was clearly established that the Fourth Amendment applies to the removal of R.R. from her home by social workers and law enforcement. *See Stanley v. Finnegan*, 899 F.3d 623, 628 (8th Cir. 2018); *Riehm v. Engelking*, 538 F.3d 952, 965 (8th Cir. 2008); *Heartland Acad. Cmty. v. Waddle*, 427 F.3d 525, 533 (8th Cir. 2005).

65. At the time of deprivation, it was clearly established "that the Fourth Amendment requires that the protective seizure of children occur pursuant to a court order, or, in the absence of a court order, pursuant to probable cause or exigent circumstances." *Riehm*, 538 F.3d at 965.

66. At the time of deprivation, it was clearly established that, under the Fourth Amendment, consent to a search or seizure must be voluntary to be constitutionally valid, (1) consent is not voluntary if it is the product of duress or express or implied coercion, and (2) threatening a parent with the loss of his or her children to obtain consent constitutes unlawful coercion. *See, e.g.*, *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973); *Lynumn v. Illinois*, 372 U.S. 528, 534 (1963) (holding a confession was coerced where police threatened to take a woman's children away from her "if she did not cooperate"); *United States v. Sanders*, 424 F.3d 768, 773 (8th Cir. 2005); *Goings v. Chickasaw Cnty.*, 523 F. Supp. 2d 892, 912 (N.D. Iowa 2007) ("[A]n explicit threat to a suspect's children usually renders involuntary and subsequent consent."); *see also United States v. Tingle*, 658 F.2d 1332, 1335–36 (9th Cir. 1981) (similar). *Perry v. St. Louis Cnty.*, 2024 WL 4527198, at *10 (E.D. Mo. Oct. 18, 2024) (similar).

67. Based on the foregoing actions of the Defendants as alleged herein, the rights at issue were clearly established and any reasonable official in the position of Defendants would have known that they were violating the Fourth Amendment to the United States Constitution.

68. As a direct and proximate result of the Defendants' violation of the Fourth Amendment, U.S. Const. amend. IV, Plaintiffs suffered damages.

69. The Defendants' violation of Plaintiffs' constitutional rights protected by the Fourth Amendment constitutes recklessness and callous indifference to the rights of Plaintiffs warranting the imposition of punitive damages.

**COUNT II**
**VIOLATION OF SUBSTANTIVE DUE PROCESS**
**(Against all Defendants in their personal capacities)**

70. Each and every allegation of the Complaint is incorporated herein as if fully set forth.

71. The Fourteenth Amendment to the United States Constitution prohibits a state from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The Fourteenth Amendment guarantees personal rights that can be deemed fundamental or implicit in the concept of ordered liberty. *See Palko v. Connecticut*, 302 U.S. 319, 325 (1937).

72. Defendants (acting under color of law), deprived R.R., Timmeri, and Rylee of their substantive due process rights in violation of the Fourteenth Amendment to the United States Constitution, by their action of:

a. Preventing Timmeri and Rylee from seeing their dying son in the hospital;

b. Obtaining consent for removal of R.R. that was the product of duress and coercion;

c. Continued seizure without cause after October 28, 2024;

d. Continued seizure of R.R. after revocation of consent;

e. Prolonged seizure of R.R. by engaging in investigative and other non-prosecutorial conduct causing knowingly false, incomplete, and misleading statements to be filed with the Court on November 8, 2024; and

f. Exercising deliberate indifference to the R.R. mental health care needs.

73. The foregoing actions or inactions of Defendants were performed in direct coordination and agreement with each other, such that the Defendants actions constitute civil conspiracy, concert of action, and substantial assistance.

74. The foregoing actions and inactions of Defendants constitute a failure to exercise an affirmative duty to all Plaintiffs, which is a substantial factor leading to, and proximate cause of, the violation of constitutionally protected liberty and privacy interests of all of the Plaintiffs.

75. The foregoing actions and inactions of these Defendants, including by and through the joint conduct and civil conspiracy, constitute a policy, pattern, practice, and/or custom that is inconsistent with the exercise of reasonable professional judgment and amounts to deliberate indifference to the serious and constitutionally protected rights and liberty and privacy interests of all Plaintiffs.

76. As a result, the Plaintiffs were deprived of federally-created and state-created liberty or property rights without due process of law.

77. At the time of deprivation, it was clearly established that parents have a substantive due process right in the care and custody of their children. *See Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *Abdouch v. Burger*, 426 F.3d 982, 987 (8th Cir. 2005).

78. At the time of the deprivation, it was clearly established that children who have been removed from their parents and remain in the legal custody of DHHS have a constitutional right to adequate medical care under the Fourteenth Amendment, *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989); *Norfleet ex rel. Norfleet v. Arkansas Dep't of Human Servs.*, 989 F.2d 289 (8th Cir. 1993).

79. At the time of deprivation, it was clearly established that the right to medical care applies to mental health care as much as physical care. *See Roberson v. Dakota Boys & Girls* Ranch, 42 F.4th 924 (8th Cir. 2022); *Burton v. Richmond*, 276 F.3d 973 (8th Cir. 2002); *C.P.X. ex rel. S.P.X. v. Garcia*, 450 F. Supp. 854 (S.D. Iowa 2020); *In re C.S.*, 516 N.W.2d 851 (Iowa 1994).

80. Based on the foregoing actions of the Defendants as alleged herein, the rights at issue were clearly established and any reasonable official in the position of Defendants would have known that they were violating the Plaintiffs' substantive due process rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

81. As a direct and proximate result of the Defendants' violation of the Due Process Clause of the United States Constitution, U.S. Const. amend. XIV, Plaintiffs suffered damages.

82. The Defendants' violation of Plaintiffs' constitutional rights protected by the Due Process Clause of the United States Constitution constitutes recklessness and callous indifference to the rights of Plaintiffs warranting the imposition of punitive damages.

## COUNT III
## VIOLATION OF PROCEDURAL DUE PROCESS
## (against all Defendants in their personal capacities)

83. Each and every allegation of the Complaint is incorporated herein as if fully set forth.

84. At the time of the deprivation, it was clearly established that the Due Process Clause of the Fourteenth Amendment requires that a parent and child be afforded the opportunity to be heard at a meaningful time and in a meaningful manner after a child is removed from the home. *See Swipies v. Kofka*, 419 F.3d 709, 715 (8th Cir. 2005).

85. No such prompt review occurred before or after DHHS prohibited Timmeri and Rylee from being with Beau in the hospital, after the removal of R.R. removal on October 9, 2024, the MDT's October 28, 2024 exculpatory findings, or after the parents November 6, 2024 revocation of consent.

86. R.R. was not returned until November 15, 2024—five weeks after R.R. was taken away from her parents following the death of her four-month-old brother.

87. Defendants (acting under color of law), deprived R.R., Timmeri, and Rylee of their procedural due process rights in violation of the Fourteenth Amendment to the United States Constitution, by their action of:

a. Failing to provide a prompt hearing or judicial review prior to or after preventing Timmeri and Rylee from seeing their dying son in the hospital;

b. Failing to provide a prompt hearing or judicial review after Timmeri and Rylee executed a coerced and involuntary consent for removal;

c. Failing to provide a prompt hearing or judicial review after the events that eliminated any arguable basis for continued removal beginning no later than October 28, 2024;

d. Failing to provide a prompt hearing or judicial review after Timmeri and Rylee revoked consent for removal no later than November 6, 2024; and

e. Delaying a prompt hearing and judicial review by engaging in investigative and other non-prosecutorial conduct that caused the Application for Temporary Removal on November 8, 2024 to be filed containing knowingly false and misleading statements.

88. The foregoing actions or inactions of Defendants were performed in direct coordination and agreement with each other, such that the Defendants actions constitute civil conspiracy, concert of action, and substantial assistance.

89. The foregoing actions and inactions of Defendants constitute a failure to exercise an affirmative duty to all Plaintiffs, which is a substantial factor leading to, and proximate cause of, the violation of constitutionally protected liberty and privacy interests of all of the Plaintiffs.

90. The foregoing actions and inactions of these Defendants, including by and through the joint conduct and civil conspiracy, constitute a policy, pattern,

practice, and/or custom that is inconsistent with the exercise of reasonable professional judgment and amounts to deliberate indifference to the serious and constitutionally protected rights under the Due Process Clause of the United States Constitution.

91. Based on the foregoing actions of the Defendants as alleged herein, the rights at issue were clearly established and any reasonable official in the position of Defendants would have known that they were violating the Plaintiffs' procedural due process rights under Due Process Clause of the Fourteenth Amendment to the United States Constitution.

92. As a direct and proximate result of the Defendants' violation of the Due Process Clause of the United States Constitution, U.S. Const. amend. XIV, Plaintiffs suffered damages.

93. The Defendants' violation of Plaintiffs' constitutional rights protected by the Due Process Clause of the United States Constitution constitutes recklessness and callous indifference to the rights of Plaintiffs warranting the imposition of punitive damages.

## COUNT IV
## INTIMATE ASSOCIATION UNDER THE FIRST AMENDMENT
**(Against all Defendants in their personal capacities)**

94. Each and every allegation of the Complaint is incorporated herein as if fully set forth.

95. The First Amendment to the United States Constitution protects the right to maintain intimate human relationships between children and their parents. U.S. Const. amend. I; *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–19 (1984).

96. Defendants (acting under color of law), deprived R.R., Timmeri, and Rylee of intimate association rights in violation of the First Amendment to the United States Constitution, by their action of:

a. Preventing Timmeri and Rylee from seeing their dying son in the hospital;
b. Obtaining consent for removal of R.R. that was the product of duress and coercion;
c. Continued seizure without cause after October 28, 2024;
d. Continued seizure of R.R. after revocation of consent; and
e. Prolonged seizure of R.R. by engaging in investigative and other non-prosecutorial conduct causing knowingly false, incomplete, and misleading statements to be filed with the Court on November 8, 2024.

97. The foregoing actions and inactions of Defendants constitute a failure to exercise an affirmative duty to all Plaintiffs, which is a substantial factor leading to, and proximate cause of, the violation of constitutionally protected intimate association rights under the First Amendment of all of the Plaintiffs.

98. The foregoing actions and inactions of these Defendants, including by and through the joint conduct and civil conspiracy, constitute a policy, pattern, practice, and/or custom that is inconsistent with the exercise of reasonable professional judgment and amounts to deliberate indifference to the serious and constitutionally protected intimate association rights under the First Amendment of all of the Plaintiffs.

99. Based on the foregoing actions of the Defendants as alleged herein, the rights at issue were clearly established and any reasonable official in the position of Defendants would have known that they were violating the First Amendment to the United States Constitution.

100. As a direct and proximate result of the Defendants' violation of the First Amendment of the United States Constitution, U.S. Const. amend. I, Plaintiffs suffered damages.

101. The Defendants' violation of Plaintiffs' constitutional rights protected by the Due Process Clause of the United States Constitution constitutes recklessness and callous indifference to the rights of Plaintiffs warranting the imposition of punitive damages.

**COUNT V**
**DECLARATORY AND INJUNCTIVE RELIEF**
**(against all Defendants in their official capacities)**

102. Each and every allegation of the Complaint is incorporated herein as if fully set forth.

103. Defendants actions set forth above violate the constitutional rights of the Plaintiffs under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

104. Defendants, unless restrained, will continue to engage in the acts described herein.

105. Accordingly, Plaintiffs seek declaratory and injunctive relief against Defendants in their official and individual capacities for their violation of the United States Constitution, as alleged above.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for the following relief:

a. An award in an amount which will fully and fairly compensate Plaintiffs for the damages they sustained, including pre- and post-judgment interest.

b. An award of punitive and exemplary damages against Defendants.

c. An award of all costs and attorneys' fees pursuant to any applicable statute or authority, including 42 U.S.C. § 1988.

d. A declaration, order, and judgment holding that Defendants violated the Fourth Amendment to the United States Constitution.

e. A declaration, order, and judgment holding that Defendants violated the Due Process Clauses of the Fourteenth Amendment to the United States Constitution.

f. A declaration, order, and judgment holding that Defendants violated the First Amendment to the United States Constitution.

g. A permanent injunction requiring Defendants to cease any policy, practice, custom, and conduct in violation the First, Fourth, and Fourteenth Amendments to the United States Constitution.

h. Grant other such relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a jury trial of all issues contained herein so triable in this action.

Dated: October 5, 2026

Respectfully submitted,

/s/*Scott M. Wadding*

Scott M. Wadding AT0010447
SEASE & WADDING
104 SW Fourth Street, Suite A
Des Moines, Iowa 50309
Telephone: (515) 883-2222
Facsimile: (515) 883-2233
swadding@seasewadding.com

*Attorneys for Plaintiffs*